**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:18-CV-00179-JHM-HBB**

**CARRIE LYNN POTTS**                                               **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                         **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Carrie Lynn Potts ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 17) have filed a Fact and Law Summary. For the reasons that follow, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

Pursuant to General Order No. 2014-17, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. By Order entered February 26, 2019 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

On February 4, 2013, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 161). Both applications alleged that she became disabled on April 30, 2012 (<u>Id.</u>). On March 4, 2014, Administrative Law Judge Jerry Faust ("ALJ Faust") conducted a video hearing from St. Louis, Missouri (<u>Id.</u>). Plaintiff and her non-attorney representative, Jeffrey Smith, participated from Owensboro, Kentucky (<u>Id.</u>). Mary A. Harris testified as an impartial vocational expert during the hearing (<u>Id.</u>).

In a decision dated May 12, 2014, ALJ Faust evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 161-70). At the first step, ALJ Faust found that Plaintiff has not engaged in substantial gainful activity since April 30, 2012, the alleged onset date (Tr. 163). At the second step, ALJ Faust determined that Plaintiff has the following severe impairments: systemic lupus erythematosus (SLE) and class for lupus nephritis (<u>Id.</u>). ALJ Faust also determined that Plaintiff's thymoma, occasional chest pain, and occasional blurry vision are non-severe impairments (Tr. 164). At the third step, ALJ Faust found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).

At the fourth step, ALJ Faust concluded that Plaintiff has the residual functional capacity ("RFC") to lift and carry, push and pull 10 pounds occasionally and 5 pounds frequently; can sit, with normal breaks, for a total of six of eight hours per day; can stand and walk with normal breaks for a total of two of eight hours per day, but for no more than 15 minutes at a time; can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; should avoid even moderate exposure to extreme cold and vibration, as well as

exposure to hazards, such as unprotected heights, dangerous machinery, and commercial driving; and Plaintiff should not have any sun exposure (Tr. 165). ALJ Faust determined that Plaintiff was unable to perform any past relevant work (Tr. 169).

At the fifth step, ALJ Faust considered Plaintiff's RFC, age, education, past work experience, and testimony from the vocational expert (Tr. 169-70). ALJ Faust found Plaintiff could perform jobs that exist in significant numbers in the national economy (Id.). Therefore, ALJ Faust concluded that Plaintiff had not been under disability, as defined in the Social Security Act, from April 30, 2012, through the date of his decision, May 12, 2014 (Tr. 170).

Plaintiff timely filed a request for the Appeals Council to review ALJ Faust's decision (Tr. 219). The Appeals Council denied Plaintiff's request for review (Tr. 175-77).

On October 20, 2015, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 107, 293-99). Plaintiff alleged that she became disabled on May 10, 2012, because of lupus, chronic kidney disease, and depression (Tr. 319). On November 28, 2017, Administrative Law Judge Lisa R. Hall ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 107, 125-28). Plaintiff and her attorney, M. Michelle Cecil, participated from Owensboro, Kentucky (Id.). Kenneth Boaz, an impartial vocational expert, also testified during the hearing (Id.).

In a decision dated February 28, 2018, ALJ Hall evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 107-18). ALJ Hall noted that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017 (Tr. 110). At the first step, ALJ Hall found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of May 10, 2012 through her date last

insured of December 31, 2017 (Id.). At the second step, ALJ Hall determined that Plaintiff's SLE with chronic pain and nephritis is a severe impairment (Id.). ALJ Hall found that Plaintiff's migraines and affective disorder were non-severe impairments (Tr. 110-11). At the third step, ALJ Hall concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 111).

At the fourth step, ALJ Hall found through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except she can lift/carry and push/pull up to 10 pounds; she can sit up to six hours of an eight-hour workday; she can stand/walk in 15 minute increments for up to two hours of an eight-hour workday; she can never climb ladders; she can perform occasional postural activities; she should avoid moderate exposure to temperatures, especially cold and vibration; she should avoid all exposure to hazards, such as unprotected heights or moving/dangerous machinery; and she must avoid prolonged sun exposure (Tr. 112). Relying on testimony from the vocational expert, ALJ Hall found through the date last insured Plaintiff was unable to perform any of her past relevant work (Tr. 117).

ALJ Hall proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 117-18). ALJ Hall found that Plaintiff can perform a significant number of jobs that exist in the national economy (Id.). Therefore, ALJ Hall concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from May 10, 2012, the alleged onset date, through December 31, 2017, the date last insured (Tr. 118).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 291-92). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenged Findings

A

Plaintiff disagrees with Finding Nos. 3, 5, 9, 10, and 11 in ALJ Hall's decision which is the final decision of the Commissioner (DN 12). Before addressing Plaintiff's arguments, there is a preliminary matter that must be addressed. Plaintiff at various points in her memorandum cites medical evidence she submitted to the Appeals Council in support of her request for review of ALJ Hall's decision (*see* DN 12-1 PageID # 1299, 1301, 1314 citing Tr. 9, 15, 18, 22, 25, 29, 32, 35, 39, 50-51, 90, 94, 95). Except for the October 23, 2017 treatment note prepared by Dr. Mourad (*see* Tr. 90-91, 1131-32), ALJ Hall did not have an opportunity to consider this medical evidence when she rendered her decision.

Sixth Circuit law is well settled. When the Appeals Council considers new evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. *See* <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993). Here, ALJ Hall's decision became the final decision of the Commissioner when the Appeals Council declined review. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). This means, except for the October 23, 2017 treatment note of Dr. Mourad (*see* Tr. 90-91, 1131-32), the medical evidence Plaintiff submitted to the Appeals

Council (Tr. 8-89, 92-98) cannot be considered in deciding whether to uphold, modify, or reverse the final decision of the Commissioner.

The medical evidence Plaintiff submitted to the Appeals Council (Tr. 8-89, 92-98) can be considered for the limited purpose of determining whether a pre-judgment remand is appropriate under sentence six of 42 U.S.C. § 405(g). *See* Cline, 96 F.3d at 148; Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994). But Plaintiff must demonstrate the "new" evidence is "material" and there is "good cause" for failing to present it to the Administrative Law Judge. S*ee* Cline, 96 F.3d at 148; Faucher, 17 F.3d at 174-175. Except for the October 23, 2017 treatment note of Dr. Mourad (*see* Tr. 90-91, 1131-32), the medical evidence submitted to the Appeals Council (Tr. 8-89, 92-98) is "new" because it did not exist or apparently was not available to Plaintiff before ALJ Hall rendered her decision. *See* Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).

ALJ Hall's decision addresses whether Plaintiff was under a disability from her alleged onset date of May 10, 2012 through her date last insured which is December 31, 2017 (Tr. 118). Most of the new medical evidence is not "material" because it merely depicts an aggravation of an existing condition from February 12, 2018 through May 14, 2018, which is after the relevant time frame (*see* Tr. 8-89, 92-93). *See* Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 712 (6th Cir. 1988). Although the November 13, 2017 treatment note of Dr. Brey (Tr. 94-98) falls within the relevant time frame, the information it provides is innocuous. *See* Ferguson, 628 F.3d at 276 (to be "material" there must be a "reasonable probability" the Commissioner would have reached a different disposition). Finally, Plaintiff has made no effort to satisfy the "good cause"

requirement which requires a showing of reasonable justification for the failure to present the new evidence to ALJ Hall. *See* <u>Foster</u>, 279 F.3d at 357. In sum, a pre-judgment remand under sentence six of 42 U.S.C. § 405(g) is not appropriate.

B

1. Arguments of the Parties

Plaintiff argues ALJ Hall's failure to consider whether her migraines/headaches, fatigue, and hypersomnia are severe impairments in Finding No. 3 is reversible error because the conditions were not considered in assessing Plaintiff's RFC in Finding No. 5 (DN 12-1 PageID # 1303-08 citing <u>Maziarz v. Sec'y of Health & Human Serv's.</u>, 837 F.2d 240, 244 (6th Cir. 1987)). Additionally, Plaintiff asserts that ALJ Hall's assessment of her credibility does not comport with applicable law (DN 12-1 PageID # 1319-23).

Defendant argues Plaintiff has not satisfied her burden of showing these conditions are severe impairments and what additional limitations were required beyond those already in ALJ Hall's RFC determination (DN 17 PageID # 1336-41). Defendant contends that ALJ Hall's evaluation of Plaintiff's subjective allegations are supported by substantial evidence in the record and comport with applicable law (DN 17 PageID # 1353-56).

2. Discussion

At the second step in the sequential evaluation process a claimant must demonstrate she has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii); <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show she suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement and "significantly limits" her ability to do one or more basic work activities. 20 C.F.R. §

9

404.1520(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; <u>Higgs</u>, 880 F.2d at 863. Alternatively, the claimant must show she suffers from a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii) and (c).

The undersigned has thoroughly reviewed the record and concludes that substantial evidence supports ALJ Hall's finding that Plaintiff's migraines/headaches are medically determinable but do not significantly limit her ability to do one or more basic work activities (Tr. 110). ALJ Hall accurately summarized the medical evidence in the record about the impairment (Tr. 110, 1229, 1115). While Plaintiff has cited additional treatment notes in the record, they merely acknowledge her subjective complaints, her history of headaches/migraines, and/or medication prescribed (*see* Tr. 993, 996, 1073, 1082, 1089, 1095, 1109, 1110, 1192, 1229, 1233, 1237, 1240, 1244). Overall, ALJ Hall accurately summarized Plaintiff's testimony regarding her migraines/headaches (Tr. 140-41). However, ALJ Hall indicated "[Plaintiff] reported the ability to do things for her kids like basketball and softball" (Tr. 110, 150). This would be a misstatement of Plaintiff's testimony that when she feels well enough, she goes to watch her oldest son play basketball and daughter play softball (Tr. 150). But ALJ Hall's mistake appears to be harmless for two reasons. First, if the sentence is excised from the decision ALJ Hall has still provided good reasons for concluding Plaintiff's migraines/headaches are a non-severe impairment (Tr. 110). Additionally, the RFC determination limits Plaintiff to a range of sedentary work which would be inconsistent with a finding that Plaintiff can play basketball and softball with her children.

Plaintiff did testify she experienced "nuisance headaches" four to five times a week that often "will not go away" (Tr. 140-41). But she did not testify the headaches impaired her ability to perform any of her daily activities (Id.). Moreover, Plaintiff's memorandum has not identified any objective evidence in the record demonstrating the headaches impair her ability to perform any of her daily activities (DN 12-1 PageID # 1304-05). Thus, ALJ Hall's failure to address the migraines/headaches in her RFC determination is harmless (*see* Tr. 112-16).

At the second step, ALJ Hall did not consider whether Plaintiff's fatigue and hypersomnia were severe impairments (DN 12-1 PageID # 1306-08). But this purported error was harmless because ALJ Hall found that other impairments were severe, continued with the sequential evaluation process, and considered all of Plaintiff's impairments in the remaining steps. *See* Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Mish v. Comm'r of Soc. Sec., No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); Stephens v. Astrue, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); Meadows v. Comm'r of Soc. Sec., No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); Jamison v. Comm'r of Soc. Sec., No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); Tuck v. Astrue, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008). Plaintiff's own argument acknowledges that her fatigue and hypersomnia are symptoms caused by her medical conditions and/or the side effects of her prescribed medications (DN 12-1 PageID # 1303-08). ALJ Hall assessed all of Plaintiff's subjective allegations including pain, fatigue, and hypersomnia in the context of making the RFC determination (Tr. 112-15).

In assessing Plaintiff's subjective allegations, ALJ Hall properly applied the two-part test set forth in <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986). ALJ Hall determined there was objective medical evidence of underlying medical conditions but the reported pain and other symptoms suggested impairments of greater severity than could be shown by objective medical evidence (Tr. 110-16). Therefore, ALJ Hall appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged by Plaintiff (Tr. 112-16). 20 C.F.R. § 404.1529(c)(3).

For example, ALJ Hall considered Plaintiff's level of daily activity and concluded it did not substantiate the purported degree of pain and other symptoms alleged by Plaintiff (<u>Id.</u>). ALJ Hall also considered the frequency Plaintiff sought treatment for the allegedly disabling conditions in assessing her subjective complaints. 20 C.F.R. § 404.1529(c)(3)(v). ALJ Hall assessed whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's subjective statements and the rest of the evidence in the record. 20 C.F.R. § 404.1529(c)(4). ALJ Hall also addressed the medications used to alleviate the alleged pain and other symptoms as well as the frequency of their use by Plaintiff. 20 C.F.R. § 404.1529(c)(3)(iv).

After careful consideration of the evidence, ALJ Hall found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 116). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it became the duty of ALJ Hall to make findings on the issue. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain and other symptoms

depends, of necessity, largely on the credibility of the claimant, the conclusion of ALJ Hall, who had the opportunity to observe Plaintiff's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that substantial evidence supports ALJ Hall's findings regarding Plaintiff's subjective allegations including pain, fatigue, and hypersomnia. Further, the findings comport with applicable law.

C

1. Arguments of the Parties

Plaintiff takes issue with ALJ Hall's assignment of weight to the medical source statement of her treating rheumatologist (DN 12-1 PageID # 1308-16). Plaintiff contends ALJ Hall did not follow the treating physician rule in assigning weight to the opinion expressed by Dr. Brey (Id. PageID # 1308-16). Specifically, ALJ Hall failed to provide good reasons for concluding Dr. Brey's opinion was not entitled to controlling weight (Id.). Further, ALJ Hall did not utilize the factors in 20 C.F.R. § 404.1527(c)(2)[1] and provide good reasons for the weight assigned to the opinion (Id.). Plaintiff also argues ALJ Hall conflated the medical evidence regarding flareups of her systemic lupus erythematosus ("SLE") and exacerbations of her lupus nephritis, a kidney disease (Id.).

Plaintiff also asserts that ALJ Hall's findings are internally inconsistent regarding the weight assigned to Dr. Brey's opinion (Id.). At one point ALJ Hall indicated "little weight" had been given to Dr. Brey's opinion (Id. citing Tr. 115). At another, she stated "[g]enerally, the

---

[1] Plaintiff mistakenly indicates 20 C.F.R. § 404.1527(d)(2). Effective March 26, 2012, the numbering of the treating physician rule changed, section 404.1527(d)(2) became 404.1527(c)(2).

undersigned has afforded greater weight to the findings of the claimant's treating source and/or attending and examining clinicians and physicians, due to their treatment history and degree of contact with the claimant" (Id. citing Tr. 116). Plaintiff also contends it is not clear why ALJ Hall addressed the Drummond requirement while assigning weight to Dr. Brey's opinion (Id.).

Defendant contends that ALJ Hall's evaluation of the opinion evidence was supported by substantial evidence and comports with applicable law (DN 17 PageID # 1343-47). To the extent Dr. Brey opined that Plaintiff could not complete full-time work or would not be employable due to missing four days per month, Defendant asserts the opinion is not entitled to any special significance because this is an issue reserved for the Commissioner (Id. citing 20 C.F.R. § 404.1527(d)). Defendant argues ALJ Hall explained she gave little weight to Dr. Brey's opinion because the overall evidence of record did not support his findings (Id. citing Tr. 115). ALJ Hall noted the medical notes suggested the extent of the episodic lupus was not as severe as indicated by Dr. Brey (Id. citing Tr. 116). Further, ALJ Hall explained Plaintiff had a good response to treatment overall and had some periods of complete remission (Id. citing Tr. 116, 853, 955, 958, 1252). Additionally, ALJ Hall acknowledged that recent medical records showed some positive examinations where Plaintiff exhibited pain in multiple areas and was assessed with chronic pain syndrome (Id. Tr. 116, 1138-39). Defendant points out that ALJ Hall expressly excepted Dr. Brey's opinion from the other opinions that received greater weight (Id. Tr. 115-16).

2. Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The Administrative Law Judge makes

this finding based on a consideration of medical source statements and all other evidence in the case record.  20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 404.1527(c), 404.1529, 416.927(c), 416.929.

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for assigning weight to medical opinions from treating sources:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.  *Id.* § 404.1527(c)(2).  These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" Cole, 661 F.3d at 937 (citing Wilson, 378 F.3d at 544).

On October 25, 2017, the treating rheumatologist Dr. Brey issued a medical source statement (Tr. 1127-28). Dr. Brey begins by explaining why Plaintiff meets the American College of Rheumatology diagnostic criteria for SLE (Tr. 1127). Then he identifies Plaintiff's other medical conditions and her reported symptoms (Id.). The relevant part of Dr. Brey's medical source statement reads:

> I have discussed with Carrie and have no reason to doubt her personal accounts as they are consistent with her diagnoses and her treatment. Carries [sic] overwhelming fatigue results from SLE as well as its treatment with chemotherapy and steroids.
>
> Carrie has varying limitations of her activities of daily living, maintaining social functioning, completing tasks in a timely manner due to deficiencies in concentration, persistence or pace – moderate to marked. Carrie's SLE reasonably presents good days with bad days.
>
> Assuming Carrie was trying to work full time. Carrie would miss more than four days per month as a result of the impairments or treatment. Also Carrie's symptoms would likely be severe enough to interfere with her memory, attention and concentration – not allowing her to stay focused for 2 hour segments.
>
> As a result it is my opinion that Carrie not be involved in 40 hour week employment.

(Tr. 1127-28).

ALJ Hall did not expressly address whether Dr. Brey's medical source statement was entitled to "controlling weight" (Tr. 115-16). The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Cole, 661 F.3d at 939 (citations omitted). However, a violation of this procedural requirement can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation.

Id. at 940. The first and second requirements are not applicable in this case. Therefore, the undersigned will focus on the third requirement.

ALJ Hall's RFC assessment includes a five-paragraph discussion that addresses several related issues, including her assignment of weight to Dr. Brey's opinion. ALJ Hall begins by announcing the evidence of record does not support the limitations in Dr. Brey's opinion (see Tr. 115). Then, in the sentences that follow in the first and second paragraphs, ALJ Hall acknowledges that absent evidence of improvement or deterioration in Plaintiff's condition, she is bound by ALJ Faust's severe impairment and RFC findings (Tr. 115, citing Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997), Acquiescence Ruling 98-4(6), and Dennard v. Sec'y Of Health & Human Servs., 907 F.2d 598 (6th Cir. 1990)). In the second paragraph, ALJ Hall explains that new and material evidence in the record justifies her altering ALJ Faust's prior findings (Id.). In the third and fourth paragraphs ALJ Hall assessed Plaintiff's subjective

allegations and utilized a function-by-function analysis to evaluate the limitations imposed by Plaintiff's SLE with chronic pain and nephritis (Tr. 115-16). Those limitations are ALJ Hall's RFC finding (*compare* Finding No. 5 with the first paragraph at Tr. 116).

In the fifth paragraph, ALJ Hall explains why the overall evidence of record does not support the extreme limitations in Dr. Brey's opinion (Tr. 116). ALJ Hall points out "although the medical notes suggest episodic lupus, the extent of the impairment is not as severe as Dr. Brey indicates" (Tr. 116). Next, ALJ Hall explains the medical evidence shows "[Plaintiff] has had a good response to treatment overall" and has experienced "some periods of complete remission" (Id. citing Tr. 853, 954, 1253, 958). Further, ALJ Hall acknowledges "[o]n November 14, 2017, [Plaintiff] was assessed with chronic pain syndrome" (Id. citing Tr. 1139).

Although ALJ Hall's decision did not make an explicit finding on the question of controlling weight, it sets forth a finding that Dr. Brey's opinion is not consistent with the record as a whole (Tr. 115-116, *see* 20 C.F.R. § 404.1527(c)(4)). Thus, ALJ Hall provided a sufficient reason for concluding Dr. Brey's opinion did not meet the second prong of the "controlling weight" test. *See* 20 C.F.R. § 404.1527(c)(2). Further, she gave "good reasons" for her conclusion (Id.). Although ALJ Hall did not state how much weight she accorded to Dr. Brey's opinion, her RFC findings indicate it received no weight (Tr. 15-16, *compare* Finding No. 5 with Tr. 1127-28). Additionally, it is reasonably clear that ALJ Hall excepted Dr. Brey's opinion from her comment about generally giving greater weight to opinions from treating and examining sources (Id.). Thus, ALJ Hall's violation of the procedural requirements in § 404.1527(c)(2) are deemed harmless error.

D

1. Arguments of the Parties

Next, Plaintiff argues although ALJ Hall indicated she gave "great weight" to the opinions of consultative examiners Marcy Walpert, M.A., LPP, and Dr. Benjamin Risner, she ultimately excluded limitations in those opinions from her RFC in Finding Nos. 3 and 5 (Id. PageID # 1316-19). Plaintiff contends ALJ Hall failed to explain her reasons for not accepting those limitations (Id.). Additionally, Plaintiff takes issue with ALJ Hall's assignment of great weight to the opinions of non-examining State Agency consultants Michelle Bornstein, Psy.D., and Dr. Sudhideb Mukherjee (Id.). Plaintiff asserts despite Dr. Bornstein's opinion being internally inconsistent, ALJ Hall never provides a sufficient explanation as to why it received weight equal to the weight accorded to the opinion of Ms. Walpert (Id.). Plaintiff also accuses ALJ Hall of failing to resolve inconsistencies between the opinions of Drs. Risner and Mukherjee (Id.).

Defendant asserts that ALJ Hall reasonably weighed and credited the opinions of Drs. Risner and Mukherjee (DN 17 PageID # 1347-50). Defendant contends ALJ Hall reasonably gave great weight to the findings of Ms. Walpert and Dr. Bornstein (DN 17 PageID # 1350-53). Further, Plaintiff fails to show how a mild impairment in daily functioning warranted mental functioning limitations in the RFC (Id.).

2. Discussion

The Sixth Circuit has provided the following explanation regarding the standards for assigning weight to opinions from examining and non-examining sources:

> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the

> examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart, 710 F.3d at 376.

On January 13, 2016, Ms. Walpert conducted a consultative psychological examination and prepared a report setting forth her diagnostic and functional opinions (Tr. 978-82). The primary diagnosis was mood disorder not otherwise specified (Tr. 981). On February 3, 2016, Dr. Bornstein reviewed the record, which included Ms. Walpert's report, and classified Plaintiff's mental impairment as a medically determinable affective disorder under Listing 12.04 (Tr. 190). Dr. Bornstein also expressed a functional opinion regarding the mental impairment (Id.).

At the second step, ALJ Hall considered the diagnostic and functional opinions of Ms. Walpert and Dr. Bornstein (Tr. 110). She found that Plaintiff's affective disorder was a medically determinable mental impairment. ALJ Hall then assessed whether Plaintiff's mental impairment was "severe" within the meaning of the regulations (Tr. 110-11). An impairment is "severe" if it "significantly limits" the claimant's ability to do one or more basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863.

The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas. 20 C.F.R. § 404.1520a(c)(3). At the time Ms. Walpert and Dr. Bornstein rendered their opinions, the four broad functional areas were as follows:

1.   Activities of daily living;
2.   Social functioning;
3.   Concentration, persistence, or pace; and
4.   Episodes of decompensation.

20 C.F.R. § 404.1520a(c)(3) (Revised as of April 1, 2016).

The degree of limitation in the first three functional areas was rated according to the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4) (Revised as of April 1, 2016). The degree of limitation in the fourth functional area was rated according to the following four-point scale: none, one or two, three, four or more. 20 C.F.R. § 404.1520a(c)(4) (Revised as of April 1, 2016). If the degree of limitation in the first three functional areas was found to be "none" or "mild" and the degree of limitation in the fourth area was found to be "none," the mental impairment was considered non-severe, unless the evidence otherwise indicated there was more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d) (Revised as of April 1, 2016).

Ms. Walpert opined that Plaintiff was "only mildly" impaired in the first functional area (Tr. 982). She did not indicate any limitation in the three other areas of function (Tr. 981-82). Dr. Bornstein opined the degree of limitation in all four functional areas was "[n]one" (Tr. 190).

By the time ALJ Hall rendered her decision on February 23, 2018, the four broad functional areas had been revised to:

1.   Understand, remember, or apply information;
2.   Interact with others;
3.   Concentrate, persist, or maintain pace; and
4.   Adapt or manage oneself.

20 C.F.R. § 404.1520a(c)(3) (Revised as of April 1, 2017). The four areas of mental functioning were evaluated on the following five-point rating scale: none, mild, moderate, marked, and

extreme. 20 C.F.R. § 404.1520a(c)(4) (Revised as of April 1, 2017). If the degree of limitation in the four functional areas was found to be "none" or "mild" the mental impairment was considered non-severe, unless the evidence otherwise indicated there was more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d) (Revised as of April 1, 2017).

ALJ Hall considered the evidence and found that Plaintiff had no limitation in the four functional areas (Tr. 111). She noted this was consistent with the findings of Dr. Bornstein and the overall evidence in the record (Id.). Therefore, ALJ Hall gave "great weight" to Dr. Bornstein's findings (Id.).

ALJ Hall then noted Plaintiff's performance during Ms. Walpert's evaluation; her never having seen a mental health provider despite a history of depression; and her academic performance in both high school and Owensboro Technical College (received an LPN degree) (Id.). These observations pertain to the first area of function (understand, remember, or apply information). Apparently ALJ Hall was referring to this first area of function when she concluded "[o]verall, [Plaintiff's] deficits in this area are only mild" (Id.). She then explained that "great weight" was given to the findings of Ms. Walpert because they are generally consistent with the overall evidence of record and based upon a personal evaluation of Plaintiff (Id.). While the opinions from Dr. Bornstein and Ms. Walpert differ slightly as to the degree of limitation in the first area of function, ALJ Hall's comments at the second and fourth steps suggest she accorded "greater weight" to Ms. Walpert's opinion because of her degree of contact with the Plaintiff (Tr. 111, 116).

At the second step ALJ Hall concluded that Plaintiff's medically determinable mental impairment was "non-severe" because it caused no more than a "mild" limitation in the first area of function and "no" limitation in the three other areas of function (Id.). ALJ Hall indicated while the mental assessment at step four is more detailed, the RFC assessment reflects the degree of limitation she found in her analysis at the second step (Id.). Thus, there is no merit to Plaintiff's challenges to ALJ Hall's findings regarding the opinions of Dr. Bornstein and Ms. Walpert. Additionally, ALJ Hall's findings are supported by substantial evidence in the record and comport with applicable law.

On January 9, 2016, Dr. Risner conducted a consultative physical examination of Plaintiff (Tr. 973-75). Based on Plaintiff's history, Dr. Risner opined that she will have difficulty with lifting, bending and carrying, and performing tasks related to her job as a nurse (Tr. 974). He believed Plaintiff "may be suitable for a job in a sedentary environment depending on how she is able to cope with her joint pains" (Id.). Dr. Risner indicated that Plaintiff's "strength and neurosensory function was preserved in all four extremities" and her "mental faculties were grossly intact on physical exam" (Tr. 975). After accurately summarizing Dr. Risner's report ALJ Hall commented:

> Given that Dr. Risner rendered an opinion based upon his personal examination of the claimant and his field of expertise, the undersigned affords this opinion great weight. Furthermore, it is generally consistent with the overall evidence of record.

(Tr. 114). Contrary to Plaintiff's assertion, ALJ Hall addressed Plaintiff's ability to cope with joint pains when she assessed Plaintiff's subjective complaints of pain and other symptoms (Tr. 115-116).

On May 3, 2016, Dr. Mukherjee reviewed the medical record, which included Dr. Risner's report, and indicated limitations that are consistent with less than a full range of sedentary work (Tr. 213-14, 215). Notably, Dr. Mukherjee adopted the RFC findings of ALJ Faust (Tr. 214). Regarding Dr. Mukherjee, ALJ Hall commented:

> The less than sedentary RFC assessment of state agency consultant Sudhibed Mukherjee, M.D. is afforded great weight. It adequately considers the claimant's functional limitations associated with her chronic pain and residuals associated with lupus. Accordingly, it is afforded great weight (Exhibit B6A/17).

(Tr. 116). To the extent ALJ Hall's RFC determination differs from some of the limitations expressed by Dr. Mukherjee, ALJ Hall acknowledged she was bound by ALJ Faust's severe impairment and RFC findings unless there was evidence of improvement or deterioration in Plaintiff's condition (Tr. 115, citing Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997), Acquiescence Ruling 98-4(6), and Dennard v. Sec'y Of Health & Human Servs., 907 F.2d 598 (6th Cir. 1990)). After concluding new and material evidence in the record justified altering ALJ Faust's prior findings, ALJ Hall assessed Plaintiff's subjective allegations and utilized a function-by-function analysis to evaluate the limitations imposed by Plaintiff's SLE with chronic pain and nephritis (Tr. 115-16). Those are the limitations in ALJ Hall's RFC finding (*compare* Finding No. 5 with the first paragraph at Tr. 116).

Generally, the functional opinions of Drs. Risner and Mukherjee are consistent with one another because they restrict Plaintiff to less than a full range sedentary work. To the extent the opinions differ, comments by ALJ Hall suggest she accorded "greater weight" to Dr. Risner's opinion because of her degree of contact with the Plaintiff (Tr. 116). Further, ALJ Hall's

findings, regarding the weight accorded to Drs. Risner and Mukherjee, are supported by substantial evidence in the record and comport with applicable law.

E

Next, Plaintiff challenges Finding Nos. 9, 10, and 11 (DN 12-1 PageID # 1323-).  Plaintiff asserts these findings are not supported by substantial evidence because ALJ Hall's hypothetical question to the vocational expert did not accurately portray the limitations imposed by Plaintiff's physical and mental impairments (Id.).

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When, as here, a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. § 404.1566(e); Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).   A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health &

<u>Human Servs.</u>, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987).

For the reasons set forth above, there is no merit to Plaintiff's challenges to ALJ Hall's RFC determination. ALJ Hall's hypothetical question to the vocational expert accurately conveyed the limitations in the RFC determination (Tr. 152-53). The vocational expert testified the hypothetical individual would have been able to perform the requirements of representative occupations such as small products sorter, DOT Code 521.687-086, for which there are approximately 106,000 jobs in the national economy; dowel inspector, DOT Code 669.687-014, for which there are approximately 13,000 jobs in the national economy; and stone setter, DOT Code 735.687-034, for which there are approximately 35,000 jobs in the national economy. (Tr. 154). The vocational expert's testimony is based on a hypothetical question that accurately portrayed the limitations imposed by Plaintiff's impairments. Therefore, the vocational expert's testimony constituted substantial evidence to support ALJ Hall's finding that, from May 10, 2012 through December 31, 2017, Plaintiff was able to make a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 118). Thus, Finding Nos. 9, 10, and 11 are supported by substantial evidence in the record and comport with applicable law.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

*H. Brent Brennenstuhl*

October 9, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.   Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.   If a party has objections, such objections must be timely filed or further appeal is waived.   Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

*H. Brent Brennenstuhl*

October 9, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel